**Judy Danelle Snyder, OSB No. 732834**
E-mail: judy@jdsnyder.com
LAW OFFICES OF JUDY SNYDER
1000 S.W. Broadway, Suite 2400
Portland, OR 97205
Telephone: (503) 228-5027
Facsimile: (503) 241-2249

**Grant Yoakum, OSB No. 921600**
E-mail: oregonlawyergrant@gmail.com
GRANT YOAKUM ATTORNEY AT LAW
5895 Jean Road
Lake Oswego, OR  97035
Telephone: (503) 697-1009

       Of Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

(Portland Division)

| | |
|---|---|
| **RON MOHOLT**,<br><br>        Plaintiff,<br><br>v.<br><br>**DOONEY & BOURKE, INC.**, a Connecticut corporation,<br><br>        Defendant. | Case No. 3:13-cv-01026-SI<br><br>**PLAINTIFF'S TRIAL MEMORANDUM** |

### I.    INTRODUCTION

Plaintiff Ron Moholt's ("Mr. Moholt" or "Moholt") original complaint asserted against defendant Dooney & Bourke ("Dooney") claims for: 1) unpaid wages in the form of commissions for sales to Nordstrom and Nordstrom Rack; 2) statutory penalties for failing to pay compensation in a timely manner; and 3) breach of contract for failing to pay the employer's share of taxes, business expenses and employee benefits.  Dooney moved for summary judgment on all of Plaintiff's claims.

On November 19, 2014, an Opinion and Order on the motion for summary judgment was filed,

PAGE 1 - PLAINTIFF'S TRIAL MEMORANDUM

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY
SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
FAX (503) 241-2249

granting a portion of defendant's motion for summary judgment. (Doc. 49). The following issues were identified for trial:

(1) Moholt's Nordstrom Rack claim for February 2009 commissions in the amount of $2,147.60 - Moholt's First Claim for Relief, Wage Claim - Part Two.

(2) Whether Moholt was an independent contractor or an employee, thus leaving unresolved the issue of whether Moholt is entitled to statutory penalties of 30 days of wages plus attorney's fees on the Nordstrom Rack claim; and

(3) Dooney's claim for equitable recoupment.

On January 30, 2015, the parties filed a stipulation by which they agreed to waive a jury trial and to proceed to a trial to the Court on all issues.

## II.    SUMMARY OF FACTS

### A.    Independent Contractor v. Employee

During the period covered by Moholt's complaint, Dooney had numerous employees who assumed sales responsibilities for Dooney's accounts, including Lynn Andrus, an employee who worked exclusively as a sales representative from her home in Maryland, and Annemarie Jones, who worked out of the Dooney corporate office in Connecticut. The sales work these Dooney employees perform differs little, if any, from the sales representatives characterized by Dooney as independent contractors, including Mr. Moholt.

Dooney's employees received a salary or hourly wage and Dooney paid benefits, bonuses and a reduced commission. Employees did not pay their business expenses.

Mr. Moholt received only commissions and was required to pay all of his own expenses, including the wages of his merchandisers, travel, equipment and supplies. Mr. Moholt generally was paid a 5% commission, but the commission could be 3.5% for smaller accounts and even less if the customer was split with another sales representative who serviced some of that customer's stores.

As a condition of his work for Dooney, Mr. Moholt was required to purchase specific computers

PAGE 2 - PLAINTIFF'S TRIAL MEMORANDUM

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY
SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
FAX (503) 241-2249

from Dooney and was required to use the proprietary software Dooney downloaded onto those computers. He was not reimbursed for the computer costs. Dooney provided Mr. Moholt with a Dooney business card with his name and company branding. It also provided him with a voice mail system, a Dooney email address and a Dooney-branded name badge.

Mr. Moholt hired merchandisers to go to the stores selling Dooney's products and to arrange the displays of the products in the manner specified by Dooney. Dooney provided a form to be used to measure the performance of the merchandisers and developed a set of best practices. Dooney also provided Dooney-branded badges for the merchandisers to wear when they visit customer stores. For a period of time, Dooney also provided bonuses to be paid to the merchandisers who met the company's merchandising expectations.

Dooney assigned the territory in which Mr. Moholt could represent the company. Dooney assigned the customers to Mr. Moholt, and, took customers and their commissions away from Mr. Moholt as the retailers relocated or merged.

Mr. Moholt's work related travel included attending meetings with Dooney's management and staff at times and locations established by Dooney and attending Market Week in New York City four or five times a year. Mr. Moholt was expected to travel to Dooney's headquarters in Connecticut to meet with Dooney's management and staff before Market Week. He was also expected to attend and/or present at seminars for customers, often scheduled by Dooney. Mr. Moholt was required to be available for telephone calls with Dooney's management at times selected by Dooney.

During most of Mr. Moholt's tenure, sales representatives, including those characterized as independent contractors, reported to Mairead Ainley, Sales Manager. Ms. Ainley required the sales representatives to attend mandatory meetings. Ms. Ainley advised Mr. Moholt of stores which required servicing in his territory. For a period of time, Mr. Moholt was also supervised by Tom Bendheim from the corporate office or by Bob Goodwyn, who is also a sales representative for Dooney in the southeast territory.

Dooney's President, Peter Dooney, communicated to the sales representatives that they were

PAGE 3 - PLAINTIFF'S TRIAL MEMORANDUM

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY
SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
FAX (503) 241-2249

to dress in appropriate business attire for Market Week, directing that the sales representatives dress "crisp and clean" or "black and white."

Most, if not all, of Dooney's sales representatives, represented only Dooney. Except for a brief period of time in 2000 when he first began to work for Dooney, Mr. Moholt represented only Dooney. Dooney took up all of Mr. Moholt's and the other sales representatives' time.

Dooney exercised control over the selection of customers who were permitted to obtain Dooney products for sale. Dooney repeatedly declined to sell to retailers suggested by Mr. Moholt, including the major on-line retailer, Amazon, thus restricting Mr. Moholt's opportunity to earn commissions.

Sales representatives had no authority to ensure that their customer's orders were filled, and experienced reduced commissions when Dooney allocated scarce product to other retailers.

Dooney retained exclusive authority to accept customer product returns, authorize credits to customers, negotiate profit margins, or engage in a myriad of activities which either reduced the sales representatives commissions or retroactively subtracted commissions from those already earned and paid - a process known as a "charge-back". The charge-back process could result in Mr. Moholt not receiving a commission check if his earned commissions were absorbed by charge-backs.

A customer could use returns or margin demands as cost centers in order to charge back for reasonable or unreasonable demands. Dooney accepted the customer's demands rather than lose the customer. The sales representatives, including Mr. Moholt, assigned to an account were required by Dooney to share in the loss.

Beginning in 2010, Mr. Moholt and other sales representatives were advised to report to Bob Goodwyn, another "independent sales representative". Mr. Goodwyn was requested by Dooney's management to supervise the activities of many of the sales representatives, including Mr. Moholt. Mr. Goodwyn was provided business cards listing him alternately as an Executive Vice President of Sales or Senior Vice President of Sales.

Mr. Goodwyn acted as Mr. Moholt's manager and approved transactions with his customers. Mr. Goodwyn set up meetings with Nordstrom's buyers to be attended by Mr. Moholt and other Dooney

PAGE 4 - PLAINTIFF'S TRIAL MEMORANDUM

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY
SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
FAX (503) 241-2249

sales representatives. Mr. Goodwyn's office provided forms for Mr. Moholt to use in his business. Mr. Moholt considered Mr. Goodwyn to be in management at Dooney after Ms. Ainley was no longer the Sales Manager.

### B. Nordstrom Rack Unpaid Commissions

Dooney sold merchandise to only a few customers known as "discounters", including Nordstrom Rack, T.J. Maxx/Marshalls and SteinMart.

As a result of Dooney's long relationship with Nordstrom and the prestige of having the company's product in Nordstrom stores, Dooney gave Nordstrom special concessions that were not offered to other retailers, including selling to the Nordstrom Rack. When Nordstrom expressed dissatisfaction with the service the Nordstrom Rack was receiving from Dooney's corporate sales staff, Mr. Moholt and Ms. Andrus were assigned to the Nordstrom Rack account in their respective territories.

Mr. Moholt anticipated that he would be paid commissions on sales to the Nordstrom Rack in his territory in exchange for the services he provided to the Nordstrom Rack account. He knew that Dooney paid commissions on sales to other discounters; i.e. Mr. Goodwyn was paid commissions on his sales of Dooney products to SteinMart.

From the sales to the Nordstrom Rack in spring 2009, Fall 2009 and Spring 2010, Mr. Moholt sought to recover $33,130.68 in commissions. Following the Court's ruling on Dooney's motion for summary judgment, that claim is now limited to a half commission of 2.5% on the net sales to the Nordstrom Rack in February of 2009 - commissions in the amount of $2,147.60.

### III.    ARGUMENT

### A.    The Nordstrom Rack Claim

Mr. Moholt had a reasonable expectation that he would be paid commissions by Dooney for the sales and services he provided on the Nordstrom Rack account. This expectation was in-part based upon the Dooney's agreement and practice since Mr. Moholt was hired in 2000 of paying commissions on his sales at rates between 2.5% and 5%.

PAGE 5 - PLAINTIFF'S TRIAL MEMORANDUM

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY
SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
FAX (503) 241-2249

In the absence of a written commission pay plan, Dooney's twelve year history of paying commissions to Mr. Moholt for his services to Dooney and its customers supports a contract for the payment of commissions for sales (1) of Dooney products; (2) to Dooney authorized customers; and (3) at the request of Dooney's management.  Mr. Moholt's expectation was also supported by his knowledge that Dooney previously had paid Mr. Goodwyn commissions for his sales and service on the SteinMart account - another discount retailer.

In every contract there is an implied covenant of good faith and fair dealing. *Perkins v. Standard Oil Co.*, 235 Or. 7, 16, 383 P.2d 107, 383 P.2d 1002 (1963).  *See also, Comini v. Union Oil Co. of California*, 277 Or. 753, 756, 562 P.2d 175, 176 (1977). (Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.)  When a contract confers on one party a discretionary power affecting the rights of another, the party with the discretionary power must exercise it in good faith and in accordance with fair dealing

In *Kelly v. SkyTel Communications Inc.*, 32 Fed. Appx. 283 (9th Cir. 2002)  plaintiff alleged that her employer breached the implied covenant of good faith and fair dealing when it arbitrarily decided to give her only half of her requested commission and award the other half to her manager.  *Kelly*, 32 Fed. Appx. 283 (9th Cir. 2002).  Although *Kelly* was decided under California law, it is consistent with *Best v. U.S. National Bank,* 303 Or. 557, 563, 739 P.2d 554 (1987), which was decided under Oregon law, that "[t]he covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another."

### B.    Independent Contractor vs. Employee

If Dooney expected Mr. Moholt to provide services to Dooney's customers without additional compensation - i.e. Nordstrom Rack – then Dooney must have viewed Mr. Moholt as an employee. Nevertheless, Dooney wants the right to tell Mr. Moholt when, where and for whom to provide sales and services, but also desires the court to rule that Mr. Moholt has no recourse to recover any of the

PAGE 6 - PLAINTIFF'S TRIAL MEMORANDUM

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY
SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
FAX (503) 241-2249

benefits of being an employee; i.e the commissions and the statutory penalties to which he is entitled.

A determination must be made whether, under Oregon law, Mr. Moholt was improperly characterized as an independent contractor for the limited purpose determining his entitlement to statutory penalties of thirty days of 'wages', plus an award of his reasonable attorney's fees and costs in pursuing the recovery of the Nordstrom Rack commissions. This analysis is guided by *Slayman v. FedEX Ground Package System, Inc.,* 765 F. 3d 1033 (9th Cir. 2014). For claims brought under ORS Chapter 652 the applicable test for deciding whether a worker is an employee or an independent contractor is the "right-of-control" test.

The opinion in *Slayman* provides significant detail regarding the court's analysis of the facts which resulted in the reversal of summary judgment for the defendant and a finding that summary judgment was appropriate for the plaintiffs. The facts supported the conclusion that the drivers were improperly classified as independent contractors. This conclusion was reached despite the FedEx Operating Agreement which governed its relationship with the drivers and which stated that "the manner and means of reaching these results are within the discretion of the [driver], and no officer or employee of FedEx. . .shall have the authority to impose any term or condition on [the driver] . . . which is contrary to this understanding." *Slayman*, *765 F.3d* at 1033.

Dooney has no such agreement to use as a shield. Thus, the court must consider the various methods of control Dooney imposed on Mr. Moholt, and related factors, including the following:

- he represented only Dooney and Dooney provided him with business cards, name badges, a voicemail mailbox and an email account;
- he was required to purchase specific computers from Dooney and to use Dooney proprietary software for managing the orders of Dooney product;
- his merchandisers were provided with name badges to identify them as Dooney representatives, they were expected to follow Dooney's standards for merchandising and for a period of time they were awarded bonuses by Dooney if they met those standards;

PAGE 7 - PLAINTIFF'S TRIAL MEMORANDUM

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY
SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
FAX (503) 241-2249

- he was required to dress "clean and sharp" or "black and white";

- he was assigned a specific territory and clients;

- he was expected to be in New York during Market Week four or five times each year and to meet with Dooney's staff at the corporate office in Connecticut before each Market Week;

- Dooney scheduled times and places for Mr. Moholt to attend meetings in person or by telephone with corporate staff or with customers;

- he was refused the opportunity to sell Dooney products to potential customers he proposed;

- he was expected by Dooney to service the Nordstrom Rack account without receiving additional compensation - and, in fact, did so for three sales cycles;

- he was compensated by Dooney according to a somewhat complex formula that included the exercise of substantial and sole discretion by Dooney over the rate of commissions and the reduction in commissions by charge-backs, mark downs and customer support;

- Dooney retained sole authority to grant discounts to customers without approval by Mr. Moholt although it would reduce his commissions;

- he was required to report to Dooney's management personnel, including individuals who had been given titles like "Sales Manager" and from whom Mr. Moholt had to obtain consent for certain transactions; and

- despite the effort he had invested and the relationships Mr. Moholt had developed in the years he worked for Dooney, that was capable of being swept away by Dooney reassigning his accounts to other sales representative, requiring him to share commissions with other sales representatives, and ultimately, by terminating his relationship with Dooney.

When applying the right-to-control test, as demonstrated in *Slayman,* the facts and the

PAGE 8 - PLAINTIFF'S TRIAL MEMORANDUM

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY
SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
FAX (503) 241-2249

reasonable inferences which may be drawn from those facts support the conclusion that Mr. Moholt was improperly classified by Dooney as an independent contractor. However, under the current posture of this case, following ruling on summary judgment, that analysis only provides Mr. Moholt with the opportunity to be awarded (1) **$ 2,147.60** for the first month of commissions on the Nordstrom Rack sales, plus (2) a penalty of **$ 7,645.27**, plus, (3) reasonable attorney's fees for his efforts in recovering his unpaid Nordstrom Rack commission.

### (1) Wages or Compensation

ORS 652.140 (1) provides that when an "employer discharges an employee . . ., all wages earned and unpaid at the time of the discharge or termination become due and payable not later than the end of the first business day after the discharge or termination." The penalty provision in ORS 652.150 only applies to employees, and not to independent contractors. In the present action this inquiry is limited to the penalty to be imposed for the failure to make timely payment of the Nordstrom Rack commission.

In 1967, the Oregon Supreme Court noted the wording used in ORS 652.150 regarding "wages or compensation" and construed "wage'" to mean "[a]ll earned compensation contracted to be paid by the employer for the employee's personal service regardless of the nature of such compensation." *State ex rel Nilsen v. Ore. Motor Ass'n*, 248 Or. 133, 136, 432 P.2d 512 (1967). The Court referenced a previous ruling in which it determined that an employee's sick leave was not "a mere gratuity" because the employee had been told upon hiring that he was entitled to be compensated for his accumulated sick leave at the time of termination. *State ex rel Nielson* at 136, citing *Harryman v. Roseburg Rural Fire Protection Dist.*, 244 Or. 631, 420 P.2d 51 (1966). The Court found: "[n]o discretion is vested in the employer to withhold the vacation provided the employee meets the contract terms for eligibility. To earn this right the employe is required to perform personal service. The vacation is given in exchange for this personal service." *Id.*

In 2011, Oregon District Court case, cited the following Oregon cases in addition to *State ex*

PAGE 9 - PLAINTIFF'S TRIAL MEMORANDUM

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY
SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
FAX (503) 241-2249

*rel Nilsen,* with regard to the meaning of compensation: *Crofoot v. Columbia–Willamette Air Pollution Auth.,* 31 Or.App. 903, 907, 571 P.2d 1266 (1977) (plaintiff was entitled to penalty wages where defendant acknowledged that plaintiff earned four weeks of severance compensation but refused to pay even after plaintiff's repeated requests); and *Chvatal v. U.S. Nat'l Bank of Ore.,* 285 Or. 11, 17, 589 P.2d 726 (1979) (department manager's claim for promised but unpaid vacation and severance benefits was an action for wages). *Adcock v. City of Canby,* 2011 WL 609799, (D. Or., 2011).

There should be no dispute that "wages" or "compensation" also includes income earned as commissions. ORS 652.150 (3)(a) addresses a narrow exception of when delay in the payment of a commission may occur: i.e. only when a commission is owed to an employee by a business that primarily sells motor vehicles or farm implements. The statute anticipates that commissions will be paid under this Chapter and that a failure to make such a timely payment will result in penalties.

### (2) Penalties and Attorney Fees

To provide a remedy for an employee who does not receive timely payment of his wages or other compensation, ORS § 652.150 (1) provides for a penalty if, on the termination of employment, "an employer willfully fails to pay any wages or *compensation* of any employee whose employments ceases." (*Emphasis Added*). This penalty is limited to 30 days' wages or *compensation* of the employee. ORS § 652.150(1)(a).

As a further penalty, the employer may also be required to pay the employee's reasonable attorney's fees incurred in pursuing the recovery of the compensation. Those penalties include a direction that "the court shall, upon entering judgment for the plaintiff, include in the judgment, in addition to the costs and disbursements otherwise prescribed by statute, a reasonable sum for the attorney fees at trial and on appeal for prosecuting the action." ORS 652.200 (1).

### C. The Doctrine of Equitable Recoupment

Dooney asserts that if Mr. Moholt is found to have been an employee, rather than an independent contractor, it is entitled to recoup from Moholt the "overpayments" in commissions it

PAGE 10 - PLAINTIFF'S TRIAL MEMORANDUM

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY
SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
FAX (503) 241-2249

made to him since 2000. This is a legally unsupported position and must be denied. There is no legal basis for recoupment of commissions paid to Mr. Moholt. Those commissions were earned by Mr. Moholt for services he provided to Dooney - a contract of employment for which he fulfilled all of his obligations – and for which he has paid all expenses, including wages to merchandisers, and taxes imposed on his income.

Mr. Moholt's remaining claim - for commissions earned in February of 2009 on sales to the Nordstrom Rack - is subject to a six year statute of limitations. Nevertheless, Dooney now attempts to use the affirmative defense of recoupment as if the commissions paid to Mr. Moholt from the date of his hire can be applied as a set-off. Thus, Dooney has co-mingled its potential right to recoupment with what is in reality a demand for a set-off which is a claim extinguished by the statute of limitations.

"Recoupment * * * refers to the defendant's right, in the same action, to cut down the plaintiff's demand, either because the plaintiff has not complied with some cross obligation of the contract on which he or she sues or because the plaintiff has violated some legal duty in the making or performance of that contract. * * * The practice serves to avoid needless delay and unnecessary litigation. Dooney has failed to offer any evidence as to how Mr. Moholt has not complied with some obligation in his employment with Dooney or how he has violated some legal duty in the making or performance of his contract of employment.

As a defense, recoupment cannot be used to obtain affirmative relief. Recoupment applies only by way of reduction, mitigation, or abatement of damages claimed by the plaintiff and is not an independent action." *Welsh v. Case*, 180 Or. App. 370, 376, 43 P.3d 445 (2002) (Citations omitted.)

Recoupment is confined to matters arising out of and connected with the transaction upon which the action is brought. * * * 'Set-off" is not synonymous with recoupment only in that it is a 'money demand by the defendant against the plaintiff arising upon contract and constituting a debt independent of and unconnected with the cause of action set forth in the complaint. *Rogue River Management Co. v. Shaw*, 243 Or. 54, 58 - 59, 411 P.2d 440, 442 (1966).

At trial, Mr. Moholt seeks to recover his unpaid commissions on the Nordstrom Rack sales -

PAGE 11 - PLAINTIFF'S TRIAL MEMORANDUM

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY
SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
FAX (503) 241-2249

limited to one month of commissions at 2.5% by the court's ruling on the motion for summary judgment - and statutory penalties, including reasonable attorney's fees incurred in recovering those commissions. This is the "cause of action set forth in the complaint".

"[R]ecoupment seeks the reduction of a claim because of an offsetting claim *arising out of exactly the same transaction.*" Jewell v. Compton, 277 Or. 93, 97, 559 P.2d 874, 876 (1997). Equitable consideration do not require that the parties who become adversaries in litigation be permitted, in violation of the policies underlying the statues of limitation to litigate all prior transactions which have taken place between them.

Dooney is over-reaching by trying to use "recoupment" to recover commissions retroactive to 2000. These commissions were paid to Mr. Moholt well beyond any possible recovery due to the statute of limitations. When a defendant seeks "to expand current rights using a defense, a court may properly view it as a claim masquerading as a defense and find it time barred." *Karoun Dairies, Inc. v. Karlacti, Inc.,* 2014 WL 3340917, p. 9 (S.D. Ca. July 8, 2014).

DATED this   2nd   day of February, 2015.

LAW OFFICES OF JUDY SNYDER

/s/ Judy Danelle Snyder
JUDY DANELLE SNYDER, OSB No. 732834
Telephone: (503) 228–5027
Facsimile: (503) 241-2249
Email: judy@jdsnyder.com
Of Attorneys for Plaintiff

PAGE 12 - PLAINTIFF'S TRIAL MEMORANDUM

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY
SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
FAX (503) 241-2249