**Scott G. Seidman**, OSB No. 833209
  Direct Dial: 503.802.2021
  Fax: 503.972.3721
  E-Mail: scott.seidman@tonkon.com
**Colin Love-Geiger**, OSB No. 094253
  Direct Dial: 503.802.2091
  Fax: 503.972.3791
  E-Mail: colin.love-geiger@tonkon.com
**TONKON TORP LLP**
1600 Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR 97204

**Thomas J. McAndrew,** RISB No. 1001, *Pro Hac Vice*
  Direct Dial: 401.455.0350
  Fax: 401.455.0882 Fax
  Email: tmcandrew@tjmcandrewlaw.com
**THOMAS J. MCANDREW & ASSOCIATES**
One Turks Head Place, Suite 205
Providence, Rhode Island 02903

            Attorneys for Defendant Dooney & Bourke, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

(Portland Division)

| | |
|---|---|
| RON MOHOLT, an individual | |
| Plaintiff, | **Civil No. 3:13-cv-01026-SI** |
| v. | **DEFENDANT'S SUPPLEMENTAL TRIAL MEMORANDUM** |
| DOONEY & BOURKE, INC., a Connecticut corporation, | |
| Defendant. | |

The *Slayman v. FedEx Ground Package Sys., Inc.* case is the best mandatory authority available to the court and its reasoning on the issue related to the driver's ability to hire helpers, together with the cases cited by the Ninth Circuit, provide this court with the conclusion that the ability to hire subcontractors without approval is a strong indicator of an independent contractor relationship. 765 F.3d 1033 (9th Cir. 2014). The court began by writing,

> drivers may operate multiple delivery routes and hire third parties to help perform work on those routes, they may do so only with FedEx's consent.

*Id.* at 1037 (9th Cir. 2014). This point was important enough to the court in reaching its decision that it put the consent requirement in the first paragraph, in which it explained the holding of the case. The court described the arrangement as follows:

> "Drivers may also hire third parties to help perform their work. Third-party helpers must be qualified pursuant to applicable federal, state and municipal safety standards and FedEx's Safe Driving Standards." They must be "fully trained" and must "conform fully with the Operating Agreement. Drivers in good standing under the Operating Agreement may assign their rights and obligations to replacement drivers, but any such replacement must be acceptable to FedEx."
> acceptable to FedEx."

*Id.* at 1039. In addressing the first element of the right to control test (the employer's right to control) the court extensively noted FedEx's right to approve or disqualify any person the driver might want to hire as a helper:

> In *Blaine v. Ross Lumber Co.,* 355 P.2d 461 (Or. 1960), the Oregon Supreme Court found that the plaintiff was an employee where he "could hire a driver, though apparently only with [the employer's] consent." *Id.* at 465. And in *Collins v. Anderson,* 596 P.2d 1001 (Or. Ct. App. 1979), the Oregon Court of Appeals found that a worker was an employee where his choice of helper was "subject to the approval of the employer." *Id.* at 1003; cf. *Or. Drywall Sys., Inc. v. Nat'l Council on Comp. Ins.,* 958 P.2d 195, 197–98 (Or. Ct. App. 1998) (finding a general contractor had no right to control subcontractors who "were free to hire their own workers" without the contractor's consent).

*Id.* at 1045. Applying Oregon law to the FedEx analysis, the court wrote:

> Drivers must be "in good standing" in order to assign their contractual rights, and any replacement driver must be "acceptable to FedEx." Nothing in the OA limits FedEx's discretion to withhold consent to additional vehicles or routes, or to decide whether a replacement driver is "acceptable." James Primm, Vice President for FedEx, testified in his deposition that any driver seeking to use a helper must get approval to do so. Similarly, Daniel Sullivan, FedEx's founder and CEO until January 2007, testified in his deposition that FedEx may refuse to let a driver take on additional routes or sell his route to a third party. Whether FedEx ever exercises its right of refusal is irrelevant; what matters is that the right exists. See Jenkins, 421 P.2d at 973 ("As long as [the right to control] exists, it is of no consequence that the employer may not have exercised it.")

FedEx's right to control the hiring of third party helpers was dispositive of the court's holding that the right to control factor strongly favored employee status in the right to control test. Of course, there were plenty of other indicia of the right to control not present in this case, such as:

- FedEx controlled every aspect of the drivers' appearance:
    - shoes
    - socks
    - hair
    - body odor
    - had to wear FedEx uniform
    - managers can prevent drivers from - working if improperly dressed or groomed
- Fedex controlled times its drivers can work
- It structured drivers workload to ensure working between 9.5 and 11 hours a day, and dictates all addresses delivered to.
- FedEx did performance evaluations 4 times per year.
- FedEx evaluated them on whether the drivers "places his or her keys on the pinky finger of his or her non-writing hand after locking the vehicle"

Based on all of these factors indicating extensive control, the court held that the drivers were employees.

In contrast, in *FedEx Home Delivery v. N.L.R.B.,* the D.C. Circuit was called upon to evaluate whether FedEx drivers were employees or independent contractors in the context of allegations it committed an unfair labor practice by refusing to bargain with the union certified as the collective bargaining representative of its Wilmington, Massachusetts drivers. 563 F.3d 492, 495 (D.C. Cir. 2009). In analyzing the issue, the court used a 10-factor common law agency test, which evolved from, and still included, a primary analysis involving the right to control the drivers. The court began its analysis by focusing on the right of the drivers to hire their own helpers:

> "Tellingly, contractors may contract to serve multiple routes or hire their own employees for their single routes; more than twenty-five percent of contractors have hired their own employees at some point. The multiple route contractors have sole authority to hire and dismiss their drivers"; they are responsible for the "drivers' wages" and "all expenses associated with hiring drivers, such as the cost of training, physical exams, drug screening, employment taxes, and work accident insurance." The drivers' pay and benefits, as well as responsibility for fuel costs and the like, are negotiated "between the contractors and their drivers." *Id.* In addition, "both multiple and single route contractors may hire drivers" as "temporary" replacements on their own routes; though they can use FedEx's "Time Off Program" to find replacement drivers when they are ill or away, they need not use this program, and not all do. [C]ontractors do not need to show up at work every day (or ever, for that matter); instead, at their discretion, they can take a day, a week, a month, or more off, so long as they hire another to be there. "FedEx [also] is not involved in a contractor's decision to hire or terminate a substitute driver, and contractors do not even have to tell FedEx [ ] they have hired a replacement driver, as long as the driver is 'qualified.' " "Contractors may also choose to hire helpers" without notifying FedEx at all; at least six contractors in Wilmington have done so.

*Id.* at 499. Based largely on the drivers' ability to hire their own employees without FedEx approval, the D.C. Circuit concluded that the drivers were properly classified as independent contractors.

The *FedEx v. NLRB* case is much more similar to the dispositive Oregon case cited by the Ninth Circuit in *Slayman*. In *Oregon Drywall Sys., Inc. v. Nat'l Council on Comp. Ins.,* the Oregon Court of Appeals was called on to review the finding by SAIF Corporation that 18 subcontractors of the drywall company were employees under the Workers Compensation Law. 153 Or. App. 662, 958 P.2d 195 (1998). The relevant test for the determination is the right to control test, and the court examined "(1) direct evidence of a right to control; (2) furnishing of tools and equipment; (3) the method of payment; and (4) the right to discharge without liability." *Id.* at 666. In analyzing the question, the court noted that

> The subcontractors were free to hire their own workers if their licensing permitted it. They frequently worked with other subcontractors on jobs and split the fees. Oregon Drywall had no interest or concern in any arrangement subcontractors might make to work with others.

*Id.* at 665. Although the court did not specifically mention the right to hire third parties in its discussion, it held the workers properly independent contractors, writing:

> All direct evidence of a right to control shows that the relationship of Oregon Drywall and its subcontractors was not one of employment: subcontractors could accept or refuse a job; they could set their own hours within the time frame of the general contractor; they could use their own methods to reach the intended result; and they were not subject to monitoring in the method of doing their work, but only in their progress.

*Id.* at 667.

The outcome of the *Drywall* case lies in stark contrast to the conclusion reached by the Oregon Court of Appeals in *Collins v. Anderson*, 40 Or. App. 765, 769, 596 P.2d 1001, 1003 (1979). In that case the court was also called upon to evaluate employee vs. independent contractor status in the context of the right to control test. The court noted that the putative employer "retained the right to approve any assistant the nailers engaged and could discharge that assistant." *Id.* at 769. This exercise of control, in part, led the court to conclude, "[a]lthough the relationship between employer and claimant had certain indicia of an independent contractor

status we conclude on balance the indicia of control indicating an employer-employee relationship predominates." *Id.* at 770.

The above cases demonstrate the importance of the independent contractor's right to hire third parties without approval in the right to control analysis. Due to Ron Moholt's sole authority in deciding who to hire and fire as his merchandisers, the court should hold that he was an independent contractor as a matter of law.

DATED: April 8, 2015.

        TONKON TORP LLP

        By    */s/ Colin Love-Geiger*
          Scott G. Seidman, OSB No. 833209
           Direct Dial: 503.802.2021
           Fax: 503.972.3721
           E-Mail: scott.seidman@tonkon.com
          Colin Love-Geiger, OSB No. 094253
           Direct Dial: 503.802.2091
           Fax: 503.972.3791
           E-Mail: colin.love-geiger@tonkon.com

        Attorneys for Defendant